## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

| | |
|---|---|
| PAUL ALLEN, DOMONIC BANKS, MORTON BRIMBERRY, BRANDON BROOKINS, GARY COLLIER, ISAAC DUNCAN, KASEY FARRIS, BRANDON GEORGE, GILBERT GIANCATERINO, DEONTAY GRIER, MARCO GRIER, LAMAR GUDES, ARMANDO GUTIERREZ, TRON HENDERSON, DOMINIQUE HUDSON, JERMAINE JOHNSON, STEVEN JONES, TIMOTHY JONES, MARTHA REVILLA LARA, TREBBIE LEE, CODY MILBURN, RAKIM MOORE, NATHANIEL MOORE JR., HECTOR CHAVEZ PALMA, RONALD PITTS, FREDERICK POITIER, ANDRE PONDER, RAHEEM SPARROW, WILLIAM BRANDON TEMPLES, MARGARITO VARGAS, AND EDDIE WESLEY | CIVIL ACTION FILE NO. |
| Plaintiffs, | |
| v. | |
| WHITE OAK PASTURES, INC., | |
| Defendant. | |

### JOINT COMPLAINT: FLSA

Plaintiffs file this Joint Complaint against Defendant White Oak Pastures,

Inc. (hereafter "White Oak" or "Defendant") for recovery of overtime

compensation and allege as follows:

## INTRODUCTION

### 1.

This is an action to recover for work that Plaintiffs performed for Defendant without proper overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 207 *et seq*. ("FLSA").  Specifically, the Plaintiffs, along with numerous others, all worked in or in support of Defendant's red meat abattoir ("RMA") and regularly worked in excess of 40 hours per week, often as much as 60 to 70 hours.   Plaintiffs were non-exempt employees under the FLSA and are seeking back pay, liquidated damages and attorneys' fees to remedy the Defendant's willful refusal to pay the overtime required by the FLSA.

### JURISDICTION AND VENUE

### 2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1337 and 29 U.S.C. § 207 *et seq*. and 29 U.S.C. § 216(b).

### 3.

Venue is proper pursuant to 28 U.S.C. § 1391 in that the unlawful employment practices and the violations of Plaintiffs' rights were committed in this judicial district.

## PARTIES

### Plaintiff Paul Allen

4.

Plaintiff Paul Allen is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through September 2015, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

5.

As an RMA worker, Plaintiff Allen worked in the cut room, grind room, kill floor, and loading docks of the RMA. He also helped out in other areas of the plant as needed.

6.

In performing his job, Plaintiff Allen worked at least 261.22 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Domonic Banks**

7.

Plaintiff Domonic Banks is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through February 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

8.

As an RMA worker, Plaintiff Banks worked throughout the RMA, including the grind room. Plaintiff would grind the meat and package it. When needed, Plaintiff would also work in the cut room and scrape bones, separate it, and place meat into bins. Plaintiff also cleaned in all areas of the plant and on weekends loaded tractor trailers with hides.

9.

In performing his job, Plaintiff Banks worked at least 113.31 hours of overtime during the relevant period for which he was paid only straight-time and

denied the additional half-time pay required under the FLSA.

**Plaintiff Morton Brimberry**

10.

Plaintiff Morton Brimberry is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through April 2016, Plaintiff performed non-exempt labor, as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

11.

As an RMA worker, Plaintiff Brimberry worked throughout the RMA, including inventory control and assisting in the grind room, loading docks, and cut room.

12.

In performing his job, Plaintiff Brimberry worked at least 616.44 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Brandon Brookins**

13.

Plaintiff Brandon Brookins is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through March 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

14.

As an RMA worker, Plaintiff Brookins worked throughout the RMA, including the grind room, loading docks, and cut room. Plaintiff put together all grinding equipment, loaded the machines and operated them, made hamburger loaf and packed the product using the roll-stop machine. Plaintiff was trained on all of the different jobs in the grind room and also cleaned up at the end of the day.

15.

In performing his job, Plaintiff Brookins worked at least 63.99 hours of overtime during the relevant period for which he was paid only straight-time and

denied the additional half-time pay required under the FLSA.

**Plaintiff Gary Collier**

16.

Plaintiff Gary Collier is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through April 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

17.

As an RMA worker, Plaintiff Collier worked throughout the RMA, including the grind room, cut room, and loading docks. Plaintiff also helped out in other areas throughout the plant as needed.

18.

In performing his job, Plaintiff Collier worked at least 93.60 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Isaac Duncan**

19.

Plaintiff Isaac Duncan is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through December 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

20.

As an RMA worker, Plaintiff Duncan worked throughout the RMA, including the grind room and meat cutting room. Plaintiff also helped out in other areas of the plant as needed.

21.

In performing his job, Plaintiff Duncan worked at least 130.64 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Kasey Farris**

22.

Plaintiff Kasey Farris is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through December 2014, Plaintiff performed non-exempt labor, as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

23.

As an RMA worker, Plaintiff Farris worked throughout the RMA, including in the grinding room where he helped grind the meat and package it up.  Plaintiff also helped out in the cut room, on the loading docks loading meat and assisted with outside cleanup.

24.

In performing his job, Plaintiff Farris worked at least 59.05 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Brandon George**

25.

Plaintiff Brandon George is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through January 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

26.

As an RMA worker, Plaintiff George worked throughout the RMA, including as meat cutter. Plaintiff job would assist in the cut room where he broke down cows, maintained the knives, and prepared cuts of meat.  He also helped out in the grind room where he boxed up meat.

27.

In performing his job, Plaintiff George worked at least 745.33 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Gilbert Giancaterino**

28.

Plaintiff Gilbert Giancaterino is a legal resident and citizen of the United States and the State of Pennsylvania.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through October 2014, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

29.

As an RMA worker, Plaintiff Giancaterino worked throughout the RMA, including on the kill floor, cut room and grind room. Plaintiff would record the number of the cows by checking the tag on their ear, then help with skinning, cutting and cleaning the cows. He also helped to ensure the cows were ready to go onto the next step, by working as quality control before the carcass got into the cooler. Plaintiff also worked anywhere else in the beef plant where assistance was needed.

- 11 -

30.

In performing his job, Plaintiff Giancaterino worked at least 77.66 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Deontay Grier**

31.

Plaintiff Deontay Grier is a legal resident and citizen of the United States and the State of Georgia. He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through August 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

32.

As an RMA worker, Plaintiff Grier worked throughout the RMA, including the grind room, cut room, kill floor, and loading docks. Plaintiff would grind meat into hamburger, make beef patties, and bag and box the patties. Occasionally, Plaintiff helped grind bones, remove hides and pick up trash from the plant.

33.

In performing his job, Plaintiff Grier worked at least 86.32 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Marco Grier**

34.

Plaintiff Marco Grier is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through April 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

35.

As an RMA worker, Plaintiff Grier worked throughout the RMA, including in the grind room and on the kill floor. Plaintiff would run scales and box up product.  He also collected, ground and disposed of waste product.

36.

In performing his job, Plaintiff Grier worked at least 151.9 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Lamar Gudes**

37.

Plaintiff Lamar Gudes is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through August 2017 and from October 2017 to approximately July 2018, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

38.

As an RMA worker, Plaintiff Gudes worked throughout the RMA, including in the grind room, cut room, the kill floor, and on the loading docks. Plaintiff helped grind and package beef and also assisted in cleaning the RMA.

39.

In performing his job, Plaintiff Gudes worked at least 97.13 hours of overtime during the period ending in August 2017 and additional overtime hours from October 2017 to July 2018 for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Armando Gutierrez**

40.

Plaintiff Armando Gutierrez is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through September 2015, Plaintiff performed non-exempt labor, as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

41.

As an RMA worker, Plaintiff Gutierrez worked throughout the RMA, and assisted throughout the plant as needed.

42.

In performing his job, Plaintiff Gutierrez worked at least 405.70 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Tron Henderson**

43.

Plaintiff Tron Henderson is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through January 2014, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

44.

As an RMA worker, Plaintiff Henderson worked throughout the RMA, including the cut room and the grind room.

45.

In performing his job, Plaintiff Henderson worked at least 657.94 hours of

overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

### Plaintiff Dominique Hudson

46.

Plaintiff Dominique Hudson is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through March 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

47.

As an RMA worker, Plaintiff Hudson worked throughout the RMA, including the cut room. Plaintiff primarily worked as a meat cutter in the cut room.

48.

In performing his job, Plaintiff Hudson worked at least 419.34 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Jermaine Johnson**

49.

Plaintiff Jermaine Johnson is a legal resident and citizen of the United States and the State of Alabama.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through March 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

50.

As an RMA worker, Plaintiff Johnson worked throughout the RMA, including the grind room and on the kill floor. Plaintiff would collect bones from the kill floor, then he separated the bones from the fat and other guts, and he fed what he separated into a machine to grind it up for disposal.

51.

In performing his job, Plaintiff Johnson worked at least 476.52 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

- 18 -

**Plaintiff Steven Jones**

52.

Plaintiff Steven Jones is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through September 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

53.

As an RMA worker, Plaintiff Jones worked throughout the RMA, including the grind room, on the kill floor, and in the cut room. Plaintiff worked in the grind room where he loaded meat into the grinder, boxed it and prepared labels. He also worked the kill floor removing waste and in the cut room.

54.

In performing his job, Plaintiff Jones worked at least 204.50 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Timothy Jones**

55.

Plaintiff Timothy Jones is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through April 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

56.

As an RMA worker, Plaintiff Jones worked throughout the RMA, including on the kill floor, in the grind room, cut room, and in sanitation.  As part of his job he would clean out the cow pens as well as clean in the kill, grind and cut rooms. He also helped out with the other jobs in the RMA as needed.

57.

In performing his job, Plaintiff Jones worked at least 81.40 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Martha Revilla Lara**

58.

Plaintiff Martha Revilla Lara is a legal resident and citizen of the United States and the State of Georgia.  She is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During her employment through July 2013, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which she was not paid the overtime wage differential.  Plaintiff submits herself to the jurisdiction of this Court.

59.

As an RMA worker, Plaintiff Lara worked throughout the RMA, including in the cut room and grind room. Plaintiff cleaned the cutting room then later during her employment she would pack the meat in the grind room and also work in the cutting room. She also would help clean up after workers at the end of the day.

60.

In performing her job, Plaintiff Lara worked at least 770.98 hours of overtime during the relevant period for which she was paid only straight-time and denied the additional half-time pay required under the FLSA.

### Plaintiff Trebbie Lee

61.

Plaintiff Trebbie Lee is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through November 2015, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

62.

As an RMA worker, Plaintiff Lee worked throughout the RMA, including the cut room, grind room, and on the kill floor. As part of his job Plaintiff cut meat every day, helped retrieve and deliver the meat to the cut room, input inventory, stocked the beef, made sure beef packaged correctly, and shipped internet beef orders out to people's houses. Plaintiff also worked in the grind room when needed, helped clean in the kill room, and also took out hides and guts out of cows. In addition, he helped bring the cows in, unloaded them from the trailer and brought them around to the kill pit.

63.

In performing his job, Plaintiff Lee worked at least 1,478.23 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Cody Milburn**

64.

Plaintiff Cody Milburn is a legal resident and citizen of the United States and the State of Alabama.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through November 2015, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

65.

As an RMA worker, Plaintiff Milburn worked throughout the RMA, including the cut room, grind room, on the kill floor, and on-line beef sales.  When not processing orders, he would assist in the cut room or take inventory.

66.

In performing his job, Plaintiff Milburn worked at least 781.23 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Rakim Moore**

67.

Plaintiff Rakim Moore is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through January 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

68.

As an RMA worker, Plaintiff Moore worked throughout the RMA, including the cut room and the grind room. Plaintiff would cut meat off the bones in the cut room.  He also helped with the cleanup of the plant and worked in the grind room where he would load the grinder, transfer meat to the roll-stop machine, package

the meat, and any other various tasks that needed to be done.

69.

In performing his job, Plaintiff Moore worked at least 106.07 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Nathaniel Moore Jr.**

70.

Plaintiff Nathaniel Moore, Jr. is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through November 2015, Plaintiff performed non-exempt labor, as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

71.

As an RMA worker, Plaintiff Moore worked throughout the RMA, including the grind room, cut room, on the kill floor, and on the loading docks. When Plaintiff worked in the grind room, he dumped meat in the grinder machine, filled

up the grinder, and then moved to next machine for packaging. He would also catch the beef from the roll-stop machine, place it in a tray, package it and load pallets for shipping. Plaintiff also helped by loading trucks on the dock, unload cows off of the truck and helped load cow hides on a semi on weekends.  He also helped out in the kill room and cut room when help was needed.

72.

In performing his job, Plaintiff Moore worked at least 781.12 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Hector Chavez Palma**

73.

Plaintiff Hector Chavez Palma is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through November 2014, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

74.

As an RMA worker, Plaintiff Palma worked throughout the RMA, including

on the kill floor, cut room, grind room, and in sanitation.  Plaintiff cleaned guts

from the kill room and cut room, removed bones and any waste, including meat

and fat that was not needed. He was also in charge of cleaning the barrels that carry

all the waste and cleaning the pens that housed the cattle. He also packed meat

from the grind room and on Tuesdays he ran the hamburger machine in the grind

room.

75.

In performing his job, Plaintiff Palma worked at least 2,311.74 hours of

overtime during the relevant period for which he was paid only straight-time and

denied the additional half-time pay required under the FLSA.

**Plaintiff Ronald Pitts**

76.

Plaintiff Ronald Pitts is a legal resident and citizen of the United States and

the State of Georgia.  He is a former RMA worker for Defendant White Oak and

was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his

employment through January 2017, Plaintiff performed non-exempt labor as

defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

77.

As an RMA worker, Plaintiff Pitts worked throughout the RMA, including the cut room, grind room, and on the kill floor. Plaintiff worked mostly on the clean-up crew, which included washing down the meat off the floor, sanitation duties in all three main rooms plus outside, washing walls and all equipment, and picking up waste outside.

78.

In performing his job, Plaintiff Pitts worked at least 56.02 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Frederick Poitier**

79.

Plaintiff Frederick Poitier is a legal resident and citizen of the United States and the State of Florida.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During

his employment, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40) hours per workweek for which he was not paid the overtime wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

80.

As an RMA worker, Plaintiff Poitier worked throughout the RMA, and helped out in the plant wherever assistance was needed.

81.

In performing his job, Plaintiff Poitier worked at least 99.02 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Andre Ponder**

82.

Plaintiff Andre Ponder is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through June 2015, Plaintiff performed non-exempt labor, as defined by the FLSA and worked an amount of time that was more than forty (40) hours

per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

83.

As an RMA worker, Plaintiff Ponder worked throughout the RMA, including in the cut room, on the kill floor, and in the grind room. Plaintiff would work as a meat cutter, but also helped out on the kill floor, cleaning various areas in the plant, and assisted with grinding and packaging meat in the grind room.

84.

In performing his job, Plaintiff Ponder worked at least 41.69 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Raheem Sparrow**

85.

Plaintiff Raheem Sparrow is a legal resident and citizen of the United States and the State of Georgia. He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e). During his employment through February 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40)

hours per workweek for which he was not paid the overtime wage differential.
Plaintiff submits himself to the jurisdiction of this Court.

86.

As an RMA worker, Plaintiff Sparrow worked throughout the RMA,
including in the grind room and helped with internet orders.

87.

In performing his job, Plaintiff Sparrow worked at least 88.85 hours of
overtime during the relevant period for which he was paid only straight-time and
denied the additional half-time pay required under the FLSA.

**Plaintiff William Brandon Temples**

88.

Plaintiff William Brandon Temples is a legal resident and citizen of the
United States and the State of Georgia.  He is a former RMA worker for Defendant
White Oak and was an "employee" as that term is defined under 29 U.S.C.
§203(e).  During his employment through September 2015, Plaintiff performed
non-exempt labor as defined by the FLSA and worked an amount of time that was
more than forty (40) hours per workweek for which he was not paid the overtime
wage differential.  Plaintiff submits himself to the jurisdiction of this Court.

89.

As an RMA worker, Plaintiff Temples worked throughout the RMA, including on the kill floor, in the grind room, cut room, and on the loading docks. When on the docks Plaintiff was responsible for ensuring that all meat products were shipped out from the plant.  He also spent time working in the kill, grind and cut rooms of the beef plant when needed and helped load pallets of beef and unload cows.  He also regularly operated the fork-lift.

90.

In performing his job, Plaintiff Temples worked at least 2,571.14 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Margarito Vargas**

91.

Plaintiff Margarito Vargas is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through February 2017, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40)

hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

92.

As an RMA worker, Plaintiff Vargas worked throughout the RMA, including in the cut room, grind room, and on the kill floor.  In the RMA, Plaintiff primarily worked in the cutting room, cutting meat from the bones of the carcasses but also spent a substantial amount of time on the kill floor.

93.

In performing his job, Plaintiff Vargas worked at least 1,559 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Plaintiff Eddie Wesley**

94.

Plaintiff Eddie Wesley is a legal resident and citizen of the United States and the State of Georgia.  He is a former RMA worker for Defendant White Oak and was an "employee" as that term is defined under 29 U.S.C. §203(e).  During his employment through September 2016, Plaintiff performed non-exempt labor as defined by the FLSA and worked an amount of time that was more than forty (40)

hours per workweek for which he was not paid the overtime wage differential. Plaintiff submits himself to the jurisdiction of this Court.

95.

As an RMA worker, Plaintiff Wesley worked throughout the RMA, including on the kill floor, in the cut room, and grind room. Plaintiff worked on waste removal, grinding bones and culling the cattle guts.  He worked in all three rooms – the kill, cut and grind rooms – where he removed waste.

96.

In performing his job, Plaintiff Wesley worked at least 409.66 hours of overtime during the relevant period for which he was paid only straight-time and denied the additional half-time pay required under the FLSA.

**Defendant White Oak Pastures, Inc.**

97.

Defendant White Oak Pastures, Inc. ("White Oak") is an "employer" as that term is defined under the FLSA, 29 U.S.C. §203(s) and is subject to the provisions of the Act relating to payment of overtime compensation.  It may be served by delivering process to its registered agent Will Harris, III, 22775 Highway 27 South, Bluffton, GA 39824.

98.

Defendant White Oak is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, because it had employees engaged in commerce and because its annual gross sales volume exceeded $500,000 in each of the years 2014, 2015, 2016, 2017, 2018, 2019 and 2020.

**PRIOR PROCEEDINGS**

99.

Each of the above-named Plaintiffs were opt-in plaintiffs in the related FLSA case of *Travis Taylor, et al. v. White Oaks Pastures, Inc.,* Civil Action File No.  1:15-CV-156-LJA, filed in the Middle District of Georgia, Albany Division.

100.

By Order of the Court in *Taylor, et al. v. White Oaks Pastures, Inc.*, on March 27, 2020 [Dkt. 97], the Court decertified the FLSA class which included all of the plaintiffs named in this action.[1]

---

[1] During the period from the date each Plaintiff opted into the *Travis Taylor* case, the statute of limitations was tolled on the FLSA claims of the plaintiffs in this action. The statute of limitations began to run again from March 27, 2020, the date

BACKGROUND FACTS

101.

Defendant White Oak is a farm in Bluffton, Georgia that, among other things, specializes in raising cattle, sheep, swine, rabbits and poultry (including ducks, geese, guineas, and turkeys).

102.

Approximately 100 employees work on the farm and assist in raising the livestock and producing artisan goods and products generated by the farming operation that are then offered for retail sale.

103.

White Oak uses nearly 3,000 acres of land for cattle grazing, although, on any day, cattle graze in only three to four paddocks, averaging 30 to 40 acres each.

104.

White Oak's cattle inventory during this period was between 2,000 and 3,000 head, all at various stages of growth from birth to slaughter weight.

---

the class was decertified. Armstrong v. Martin Marietta Corp., 138 F.3d 1374, 1379 n.6, 1380 (11th Cir. 1998).

105.

Since 2008, Defendant White Oak has operated the RMA slaughterhouse on its property.

106.

Including the Plaintiffs, there are approximately 35 employees who work non-mechanized lines and perform other jobs in support of the RMA.

107.

Since 2008, Defendant has processed its own but mostly cattle that has been born and raised on other farms.

108.

The RMA is comprised of three main rooms, the kill floor or slaughter room, the cut or fabrication room, and further processing (also called the grind room).

109.

When cattle are processed, they are first brought live to a receiving area and then offloaded from trailers into pens outside the abattoir.

110.

Once in the pens, the cattle are moved in small groups through a "lead up alley" to a "knock box," where one cow at a time is stunned, rolled out of the box,

shackled around the back leg, hoisted with a chain, and bled on the slaughter floor.

111.

Employees then remove the head for delivery to an onsite USDA Inspector and the rest of the cow is skinned and eviscerated.

112.

Then the carcass goes to a "splitting station" where it is split down the middle and then passed to a final kill floor station where the carcass is trimmed of excess matter.

113.

After trimming, the carcass is sent to a chill cooler and the hides and eviscerate are taken out of the plant for further processing.

114.

Approximately 6 to 7 employees work the slaughter room and 2 help with the hides and eviscerate.

115.

After approximately 24 hours in the chill cooler, the carcasses are moved into the cut room.

116.

In the cut room, approximately 18 employees are engaged in deboning the meat and then packaging and boxing it for shipment.

117.

Once packaged, the meat is kept in a shipping cooler where it is later wrapped, sealed, and moved to trailers for shipment.

118.

Approximately two employees work the shipping cooler and shipping dock.

119.

Finally, the trimmings from the deboning process are sent to the grind room to be made into ground beef then packaged and returned to the shipping cooler for later shipment out of the plant.

120.

Approximately six to eight employees work the grind room.

121.

The remaining areas of the abattoir include an electrical room and a "bullpen," or office space, where the plant manager, inventory manager, shipping

clerk, and receiving clerk work.

## THE CATTLE SUPPLY AND SLAUGHTER

### 122.

Only about 10-12% of the cattle that White Oak slaughters and processes are born on the farm or purchased as calves.

### 123.

Approximately 90% of the cattle slaughtered and processed in White Oak's abattoir were purchased as adults and many were ready for same-day or nearly same-day slaughter.

### 124.

In fact, the practice of slaughtering at least some purchased cattle on or near the day of purchase is on-going.

### 125.

All purchased cattle are from other cow-calf operators who had raised them or possibly a buyer who in turn purchased the cattle from an operator.

### 126.

Even those cattle that are not slaughtered on or near the day of purchase, are slaughtered in short order and within as little as two to four weeks.

127.

Cattle could be slaughtered within as little as two to four weeks because, after 2014, White Oak began implementing a quarantine period of two weeks, after which the purchased cattle would be added to the herd and could be subject to immediate sorting for slaughter.

128.

Through the quarantine and sorting process, it is possible that one hundred head of cattle purchased from another farm could, after two weeks of quarantine, all be slaughtered in the very next sorting.

129.

White Oak will sometimes request that cattle be purchased at a heavier weight so that they can be assured a shorter time before slaughter.

130.

It is also a regular practice that cattle selected for slaughter will be sent to Brandon Whitehead – another farmer who has been given the responsibility of feeding the cattle on hay for as much as a week before delivering them to the abattoir for slaughter.

131.

When cattle are purchased for slaughter from other cow-calf operators,

White Oak expects them to have been properly cared for from birth to date of

purchase, meaning appropriate feed (not corn raised, no antibiotics or hormone

implants), a proper vaccination program for preventing disease, and appropriate

boosters at weaning (8 months of age).

132.

Because White Oak wants cattle that have been properly raised and cared

for, it will buy cattle for slaughter only from known farms that have in fact

properly raised them over the course of their lives and that have documentation

substantiating that the cattle have been grass fed.

133.

White Oak does not have anyone who supervises or otherwise monitors the

raising of cattle over the course of their lives prior to purchase.

134.

When using a buyer, White Oak will rely on the buyer to ensure that the

cattle are large and the farmer has raised the cattle on grass, without grain,

antibiotics, or hormones and appears free from disease or deformities.

135.

Over the years, from 2014 to 2017, cattle purchases by White Oak from just one vendor, Brandon Whitehead, numbered in the millions of dollars.

136.

More specifically, the purchases from Mr. Whitehead totaled $9,471,228.12.

137.

Purchases from another vendor, Rock Mine Farms totaled $15,098,979.41.

138.

The total cattle purchases by year are equally large.  For example, cattle purchases for the period from April 2014 to December 31, 2014, comes to just over 11 million dollars.

139.

The total amount spent by White Oak on purchasing cattle for the years 2014 to 2017 was just over 32 million dollars.

140.

In 2015 alone, approximately 9,640 head of cattle were purchased.

141.

The employees supporting the abattoir, including the Plaintiffs, processed at least 25-35 head of cattle per day, five days per week.

142.

For the year 2015, between 6,525 and 9,135 head of cattle were processed in the red meat abattoir.

143.

Between April 2014 and December 2017, White Oak purchased between 24,475 and 34,265 head of cattle for slaughter and processing.

144.

All of the cattle purchased during the period between April 2014 and December 2017 were purchased at or near the USDA kill weight.

145.

In fact, the cattle slaughtered during this period generally weighed between 1,100 and 1,300 pounds.

## NO OVERTIME PAY FOR RMA WORKERS

146.

All of the RMA workers perform only work associated with the RMA and

none are engaged in the feeding or grazing process for the White Oak cattle or in delivery of cattle.

147.

With the exception of the Operations Manager, all of the RMA employees, including the Plaintiffs, were hourly employees.

148.

However, none of the RMA employees, including the Plaintiffs, were ever paid overtime for their work in or in support of the abattoir.

149.

The work of the RMA employees typically begins about 6:30 in the morning with prep-work: setting up the rooms, getting packaging material ready, sharpening knives, and donning protective gear.

150.

The cattle start entering the knock room at about 7:30 a.m. and operations – slaughter, fabrication and grinding -- end at approximately 4:30 p.m.

151.

Once slaughter operations conclude, clean-up begins, including picking up meat scraps and bones and rinsing, soaping and sanitizing the floors and sanitizing

all of the equipment.

152.

Clean-up finishes six to eight hours later at 11:30 or 12:00 at night.

153.

At least prior to April 2017, all of the work was handled by a single shift of employees, including the Plaintiffs, all of whom were considered "red meat plant workers" or "RMA workers."

154.

As RMA workers, Plaintiffs were required to clock in when they arrived, clock out when they left, and were given a single lunch break.

155.

As RMA workers, Plaintiffs were subject to working and often did work different jobs in or in support of the abattoir and occasionally rotated jobs and were asked to fill in where necessary.

156.

In order to complete the abattoir work, Plaintiffs regularly logged extensive amounts of overtime, sometimes working more than 60 or 70 hours per week for only straight-time pay.

157.

White Oak never paid Plaintiffs or any of its RMA workers overtime for the work they did in support of the RMA.

**FLSA Wage and Hour Violations**

158.

In the summer of 2014, the Department of Labor conducted an audit of White Oak's pay practices for all of its employees, including those working in the red meat abattoir.

159.

During the course of the audit investigation, the DOL determined that White Oak was not entitled to any exemption for the payment of overtime, which position was rejected by the company.

160.

Despite the DOL determination, White Oak continued to deny overtime pay to the red meat abattoir employees.

161.

By failing to pay Plaintiffs an overtime premium for time that was worked in excess of forty (40) hours in a workweek, Defendant violated the FLSA, 29 U.S.C. §207.

162.

Defendant's conduct in refusing to pay Plaintiffs overtime compensation is a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a), entitling Plaintiffs to bring this claim within three years of the accrual of any cause of action.

163.

Based upon the facts alleged herein, Defendant White Oak had no reasonable grounds for believing that its refusal to pay an overtime premium to Plaintiffs was appropriate under the FLSA.  As such, Defendant is not entitled to any reduction in the amount of liquidated damages under 29 U.S.C. § 216(b).

164.

Upon information and belief, in failing or refusing to pay Plaintiffs overtime as required by the FLSA, Defendant has not relied on any letter ruling from the Department of Labor indicating that Plaintiffs were not entitled to overtime.

165.

Upon information and belief, in failing or refusing to pay Plaintiffs overtime as required by the FLSA, Defendant has not relied on any legal advice indicating that such practice was permitted under the FLSA.

## COUNT ONE
### VIOLATION OF THE FLSA – UNPAID OVERTIME WAGES

166.

The allegations contained in paragraphs 1 through 165 are hereby incorporated by this reference.

167.

By virtue of Defendant's failure and refusal to pay an overtime premium to Plaintiffs, all of whom regularly worked in excess of forty (40) hours in a single workweek, Defendant is in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 207 and 215.

168.

Defendant's failure and continued refusal to pay Plaintiffs the overtime compensation they are owed has been willful and in bad faith.  Plaintiffs are entitled, therefore, to the benefit of the three-year statute of limitations and unpaid compensation with interest to date plus liquidated damages all pursuant to 29 U.S.C. §§ 207, 215, 216(b) and 255.

169.

Defendant's failure or refusal to pay Plaintiffs the overtime compensation they are owed further entitles them to recover their attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiffs requests that this Court:

(a) Take jurisdiction of this matter;

(b) Issue an Order holding Defendant to be an "employer" as that term is defined under the FLSA;

(c) Issue a judgment declaring that Plaintiffs were covered by the provisions of the FLSA and that Defendant failed to comply with the requirements of the FLSA;

(d) Award the Plaintiffs proper payment for each overtime hour worked from

2014 to date of trial, calculated at one-half times the regular rate, and liquidated damages equaling 100% of overtime due the Plaintiff, as required by the FLSA;

(e) Award Plaintiffs prejudgment interest on all amounts owed;

(f) Award Plaintiffs at least nominal damages;

(g) Award Plaintiffs their reasonable attorneys' fees and costs of litigation pursuant to 29 U.S.C. § 216(b);

(h) Grant a trial by jury as to all matters properly triable to a jury; and

(i) Award any and such other further relief this Court deems just, equitable and proper.

Respectfully submitted this 6th day of April, 2020,

JF BEASLEY, LLC

By:   /s/ John F. Beasley, Jr.
      John F. Beasley, Jr.
      Georgia Bar No. 045010
      jfbeasley@jfbeasleylaw.com
      31 North Main Street
      P.O. Box 309
      Watkinsville, GA 30677
      Telephone:  706-769-4410
      Facsimile:   706-769-4471

DELONG . CALDWELL . BRIDGERS
FITZPATRICK . BENJAMIN

- 51 -

Mitchell D. Benjamin
Georgia Bar No. 049888
3100 Centennial Tower
101 Marietta Street NW
Atlanta, Georgia 30303
404.979.3150
Direct - Facsimile - Text:
770.859.0754
benjamin@dcbflegal.com
georgiawagelawyers.com

Counsel for Plaintiffs