**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| TRAVIS TAYLOR, on behalf of himself and all others similarly situated,       :<br>:<br>Plaintiffs,       :<br>:<br>v.       :<br>:       CASE NO.: 1:15-CV-156 (LAG)<br>WHITE OAK PASTURES, INC.,       :       CASE NO.: 1:20-CV-60 (LAG)<br>:<br>Defendant.       :<br>:  | |

# **ORDER**

Before the Court are the Parties' Joint Motion for Consolidation and Approval of FLSA Settlement (Motion) regarding two actions: *Taylor v. White Oak Pastures, Inc.* (*Taylor*), No. 1:15-cv-156 (M.D. Ga. 2015) and *Allen, et al. v. White Oak Pastures, Inc.* (*Allen*), No. 1:20-cv-60 (M.D. Ga. 2020). *Taylor*, No. 1:15-cv-156 at (Doc. 103). For the reasons explained below, the Motion is **GRANTED in part and DENIED in part**, and the Court **REJECTS** the Parties' proposed settlement agreement.

## **BACKGROUND**

Plaintiff Travis Taylor, on behalf of himself and all others similarly situated, initiated the *Taylor* action on September 23, 2015. *Id.* at (Doc. 1). At times relevant to the Complaint, Plaintiff and those similarly situated worked in an abattoir on Defendant White Oak Pasture, Inc.'s farm—White Oak Pastures—where they slaughtered, cut, and grounded cattle into packaged meat for eventual shipment. (*Id.* ¶¶ 13–17.) Plaintiff Taylor alleged that Defendant willfully failed to pay him and those similarly situated overtime premiums in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* (*Id.* ¶¶ 1, 27.) On February 4, 2016, Plaintiff Taylor filed a Motion for Conditional Certification of Collective Action and Issuance of Court-approved Notice in the *Taylor* action. *Id.* at (Doc. 17). The Court denied the motion for conditional certification on

September 27, 2016. *Id.* at (Doc. 23). On October 28, 2016, Plaintiff Taylor filed a Renewed Motion for Conditional Certification of Collective Action and Issuance of Court-approved Notice. *Id.* at (Doc. 27). On April 20, 2017, the Court granted the motion to certify and conditionally certified a class of plaintiffs who:

> (1) are or were employed by Defendant White Oak Pastures, Inc. from April __ 2014 [three years prior to the mailing date of the notice] to April ___ 2017 [the mailing date]; (2) worked in the Red Meat Abattoir or in support of the Red Meat Abattoir, specifically on the kill floor, in the cut room, in the grinding room, in order fulfillment, or on the loading docks of the Red Meat Abattoir; (3) were paid an hourly rate; and (4) worked more than forty hours in a work week without being paid overtime compensation.

*Id.* at (Doc. 30 at 8).[1] Approximately forty employees filed opt-in notices to be part of the class. *See id.* at (Doc. 84 at 12). After the opt-in period ended on November 3, 2017, Plaintiff Taylor filed a Second Amended Complaint, listing Terry Barrows and Layton Ferrell Duke as named Plaintiffs. *Id.* at (Doc. 55).

On February 14, 2019, Defendant filed motions for decertification and summary judgment. *Id.* at (Docs. 71, 77). Plaintiffs filed a Motion for Partial Summary Judgment that same day. *Id.* at (Doc. 72). On March 27, 2020, the Court granted Defendant's motion for decertification but denied both motions for summary judgment. *Id.* at (Doc. 97). On April 6, 2020, Plaintiff Paul Allen and several other Plaintiffs filed a separate Complaint against Defendant under the FLSA to recover proper overtime pay, initiating the *Allen* action. No. 1:20-cv-60 at (Doc. 1). All *Allen* Plaintiffs originally opted-into the class action initiated in *Taylor*, and the *Allen* Complaint is based on similar facts as the *Taylor* Complaint. *See Taylor*, No. 1:15-cv-156 at (Doc. 1); *Allen*, No. 1:20-cv-60 at (Doc. 1); *see generally Taylor*, No. 1:15-cv-156 at (Docket). There are thirty-four Plaintiffs total in the *Taylor* and *Allen* actions. *Taylor*, No. 1:15-cv-156 at (Doc. 103 at 6). On July 2, 2020, the Parties filed a Joint Motion to Stay Proceeding in both actions so they could finalize a

---

[1] For purposes of summary judgment, the Court construed the relevant employment period to be from April 1, 2014 to April 1, 2017. *Taylor*, No. 1:15-cv-156 (Doc. 97 at 1 n.1).

settlement. *Allen*, No. 1:20-cv-60 at (Doc. 7 ¶¶ 6–7); *Taylor*, No. 1:15-cv-156 at (Doc. 101 ¶¶ 7–8). The Court stayed both cases on October 16, 2020. *Taylor*, No. 1:15-cv-156 at (Doc. 102); *Allen*, No. 1:20-cv-60 at (Doc. 12). On November 3, 2020, the Parties for both actions filed the present Joint Motion for Consolidation and Approval of FLSA Settlement in *Taylor*. No. 1:15-cv-156 at (Doc. 103). The Motion is ripe for review. *See* M.D. Ga. L.R. 7.

## DISCUSSION

### I. Consolidation

The Parties in the *Taylor* and *Allen* actions seek to consolidate both actions "for the limited purpose of approval and administration of the settlement." *Taylor*, No. 1:15-cv-156 at (Doc. 103 at 2). Federal Rule of Civil Procedure 42 permits the Court to consolidate cases if they involve a common question of law or fact. "A trial court's decision to consolidate suits is discretionary." *Watts v. SMP Auto.*, Nos. 2:19-00907-KD-B, 2:19-00908-TFM-B, 2:19-00909-TFM-B, 2020 WL 1079299, at *1 (S.D. Ala. Mar. 6, 2020) (citing *Young v. City of Augusta*, 59 F.3d 1160, 1168 (11th Cir. 1995)). Courts consider several factors such as,

> (1) the risk of prejudice in allowing the matters to proceed separately, (2) the potential for confusion of facts or legal issues, (3) the risk of inconsistent verdicts, (4) the burden on parties, witnesses, and the court, and (5) the length of time and relative expense involved in conducting a single trial or multiple trials.

*Id.* (quoting *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 727 F. App'x 562, 570 (11th Cir. 2018)). "Whether the parties in the two cases are the same and whether the cases are at the same stage of trial preparation also are relevant inquiries to the determination of consolidation." *Walker v. H. Councill Trenholm State Tech. Coll.*, No. 2:06cv49-ID, 2007 WL 1140423, at *2 (M.D. Ala. Apr. 17, 2007).

Here, consolidating *Taylor* and *Allen* is proper. Both actions involve common questions of law and facts as Plaintiffs in both cases are suing Defendant under the FLSA related to their roles working in the red meat abattoir or with cattle on Defendant's farm.

3

Plaintiffs also seek the same type of relief. "Additionally, . . . the cases are at the same stage of litigation such that the risks of prejudice and confusion with consolidation are minimal." *Watts*, 2020 WL 1079299, at *1. "Moreover, keeping [two] separate actions would create a burden on the parties . . . and the court, as well as extend the length of time and the expenses necessary to resolve [the settlement]." *Id.* "Further, consolidation of these actions avoids the potential for inconsistent verdicts" on the proposed settlement agreement. *Id.* Thus, the Court will consolidate both actions for the limited purpose of reviewing the Parties' proposed FLSA settlement. *See Gonzalez v. Dynamic Recovery Sols.*, LLC, Nos. 14-CIV-24502, 14-CIV-20933, 2015 WL 738329, at *1 (S.D. Fla. Feb. 23, 2015) (consolidating actions "for settlement purposes"); *Vittorioso v. Total Mktg. Concepts, Inc.*, No. 6:12-cv-1036-Orl-31GJK, 2013 WL 6133731, at *1 (M.D. Fla. Nov. 21, 2013) (consolidating FLSA actions "for settlement purposes").

## II.   FLSA Settlement

"There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them." *Id.* at 1353. "The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations." *Id.* Here, the Parties seek to have the Court enter a stipulated judgment. Before approving an FLSA settlement, the Court must review the proposed agreement to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1355; *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (holding that the *Lynn's Food Stores* requirement of judicial approval of proposed FLSA settlement agreements also applies to settlements between former employees and employers). If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

4

### A. Bona Fide Dispute over FLSA Provisions

The Court must first determine whether there is a bona fide dispute. Plaintiffs bring their claims under 29 U.S.C. § 216(b) for violations of unpaid overtime requirements of 29 U.S.C. § 207. Section 207 requires employers to compensate employees for hours worked in excess of forty hours per week at a rate of 1.5 times the employee's regular wage. 29 U.S.C. §207(a). The Parties agree that they have a bona fide dispute regarding whether Defendant owes Plaintiffs overtime and whether liquidated damages would apply should any Plaintiffs prevail. *Taylor*, No. 1:15-cv-156 at (Doc. 103 at 5). Accordingly, there is a bona fide dispute, and the Court must determine whether the Proposed Agreement is a "fair and reasonable" compromise. *Lynn's Food Stores, Inc.*, 679 F.2d at 1355.

### B. Fair and Reasonable Settlement

In reviewing a proposed FLSA settlement agreement of a private claim, the Court "must 'scrutinize[ ] the settlement for fairness,' and determine that the settlement is a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Webb v. CVS Caremark Corp.*, No. 5:11–CV–106 (CAR), 2011 WL 6743284, at *3 (M.D. Ga. 23, 2011) (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1353, 1355). The Eleventh Circuit has held that district courts have the discretion to reject a proposed FLSA settlement as "unreasonable based on non-monetary terms such as confidentiality provisions and general releases." *Rodrigues v. CNP of Sanctuary, LLC*, 523 F. App'x 628, 629 (11th Cir. 2013); *see also, e.g.*, *Anthony v. Concrete Supply Co.*, No. 3:16-cv-70-TCB, 2017 WL 5639933, at *2 (N.D. Ga. Aug. 23, 2017) (denying an approval of settlement agreement because of confidentiality provision); *Guerra v. Flores*, 139 F. Supp. 3d 1288, 1292 (N.D. Ala. 2015) (holding proposed FLSA settlement agreement filed under seal for *in camera* review was unreasonable); *Webb*, 2011 WL 6743284, at *3 (denying approval of FLSA proposed settlement because confidentiality and pervasive release provisions were unreasonable). Thus, the Court must conduct an independent analysis of the proposed settlement agreement, including its non-monetary provisions.

### 1. Settlement Amount

Plaintiffs in both actions sought 100% of overtime due to each class member. *Taylor*, No. 1:15-cv-156 at (Doc. 1 at 11); *Allen*, No. 1:15-cv-60 at (Doc. 1 at 50–51). Pursuant to the proposed agreement, Defendant has agreed to pay an aggregate gross amount of up to $100,000 to the Plaintiffs "[i]n exchange for a release of all claims against it[,]" and this amount will be apportioned to each of the *Taylor* and *Allen* Plaintiffs as set forth in the Parties' Settlement Apportionment Sheet. *Taylor*, No. 1:15-cv-156 at (Doc. 103-1 at 5; *see also* Doc. 103-1 at 23). Courts decide whether the substantial compromise is reasonable based on the Parties' "factors and reasons considered" in reaching the settlement amount. *See Nichols v. Dollar Tree Stores, Inc.*, No. 1:13–CV–88 (WLS), 2013 WL 5933991 at *2 (M.D. Ga. Nov. 1, 2013); *see also Jun Soo Lee v. Guyoungtech USA, Inc.*, 247 F. Supp. 3d 1257, 1262 (S.D. Ala. 2017) (collecting cases).

Here, seventeen Plaintiffs, whose claims account for 95% of the damages owed, will receive just over 70% of their alleged back pay losses. *Taylor*, No. 1:15-cv-156 at (Doc. 103 at 6). The remaining seventeen Plaintiffs who have damages constituting 5% of the total losses will receive 100% of the back pay they claim is owed. *Id.* Additionally, Plaintiffs will each have their payouts classified as half wages from which taxes will be deducted as reflected on a W-2 Form. *Id.* The remaining half of the settlement to each Plaintiff will be classified as liquidated damages and reflected on a Form 1099-MISC. *Id.*

The Plaintiffs, individually, will receive between 70% and 100% of the overtime payments sought. The settlement amount is reasonable in light of the bona fide disputes, including whether overtime is actually owed and whether liquidated damages would apply if they were. Moreover, Plaintiffs are represented by experienced counsel, full discovery was exchanged, and the Parties reached the settlement after a 12-hour mediation with a respected mediator. *See Norris v. Lake Conway Landscaping of Orlando, Inc.*, No. 6:14–cv–1512–Orl–37KRS, 2015 WL 3632314, at *2 (M.D. Fla. June 10, 2015) (finding that a "significant compromise" from $47,614.60 claim to $19,750.00 was fair and reasonable where "the record reveal[ed] sufficient bona fide disputes concerning FLSA provisions" and "the fact that Plaintiff was represented and counseled by experienced attorneys, he

obtained discovery from Defendants, resolution of the action after trial is uncertain, and a well-respected mediator assisted the parties in reaching their settlement"). Thus, the Court finds that the settlement amount represents a fair and reasonable compromise of Plaintiffs' claims.

### 2. Release of Claims Provisions

The proposed agreement contains a "Release of Claims" provision. *Id.* at (Doc. 103-1 ¶ 20). Plaintiffs are required to sign a release form reflecting this provision prior to the release of any settlement funds. *Id.* Courts generally will not approve broad, so-called "pervasive releases" of claims in exchange for settlement of a plaintiff's FLSA claims alone. *Nichols*, 2013 WL 5933991, at *3 (holding that such "pervasive releases" are "inherently unfair."). "[A]n employer is not entitled to use a FLSA claim . . . to leverage a release from liability unconnected to the FLSA." *Webb*, 2011 WL 6743284, at *3 (quoting *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)). Such blanket releases are disfavored because plaintiffs must essentially release innumerable claims of unknown value for a settlement of a single FLSA claim. As the *Moreno* court explained:

> [I]n an FLSA action, neither party typically attempts to value the claims not asserted by the pleadings but within the scope of a pervasive release—that is, those "known and unknown," or "past, present, and future," or "statutory or common law," or other claims included among the boiler plate, but encompassing, terms unfailingly folded into the typical general release. Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate . . . . [Whether the claim is worthless or meritorious,] [i]n either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance. The employer's attempt to "play with house money" fails judicial scrutiny.

*Moreno*, 729 F. Supp. 2d at 1352. Approving an FLSA proposed settlement with a "pervasive release" would "confer[ ] an uncompensated, unevaluated, and unfair benefit on the employer." *Id.*

Here, the "Release of Claims" provision states, "[i]n exchange for a release of all claims against it (as described in Section C below), White Oak Pastures will pay an

7

aggregate gross amount of up to [$100,000] to the Plaintiffs." *Taylor*, No. 1:15-cv-156 at (Doc. 103-1 ¶ 12). The agreement defines "released claims" as "all claims, known or unknown, that could be asserted against White Oak Pastures arising out of or related to the employment at White Oak Pastures of one or more of the Taylor Plaintiffs and/or the Allen Plaintiffs." *Id.* at (Doc. 103-1 ¶ 11). Additionally, Section C provides that after the Court approves the settlement, "[e]ach of the Taylor Plaintiffs and Allen Plaintiffs will finally and forever be barred from seeking relief on the Released Claims . . . after payment is fully made." *Id.* at (Doc. 103-1 ¶ 20). This is the type of pervasive release disfavored by courts. Thus, the Court cannot approve the proposed agreement with the "Release of Claims" language as currently set forth.

### C. Attorney's Fees

Finally, the Court considers the reasonableness of the proposed agreement's attorney's fees. The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009) (per curiam). The Court can, however, approve a proposed settlement without separately considering the reasonableness of attorney's fees when the settlement (1) "constitutes a compromise of the plaintiff's claims," (2) "makes full and adequate disclosure of the terms of settlement," and (3) "represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff . . . ." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009).

Plaintiffs' agreement with their counsel provides that, in addition to any award of fees and expenses, counsel will receive 25% of any liquated damages recovery as a contingency fee based on an agreement to fund all costs and expenses. *Taylor*, No. 1:15-cv-156 at (Doc. 103 at 6). That 25%, however, is being waived by counsel such that Plaintiffs will receive the full benefit of the settlement amounts allocated to each of them. (*Id.*) In addition to Defendant's payment to Plaintiffs to resolve the FLSA claims, Defendant will pay Plaintiff's counsel a total sum of $127,500, which is approximately

8

50% of the total fees and expenses incurred by Plaintiffs' counsel in this case. *Id.* at (Doc. 103 at 7). The total sum being paid to Plaintiffs' counsel is supported by affidavits by Plaintiffs' counsel and detailed summaries of the legal services performed by each counsel and their law firms. *Id.* at (Docs. 103-2, 103-3). The Parties argue that the settlement amounts are fair and reasonable because all Parties are independently represented by experienced employment counsel who are well-versed in FLSA litigation, attorneys' fees and costs were negotiated separately, the Parties used a mediator to reach the proposed settlement, the litigation is complex, and the length of the litigation would be lengthy. *Id.* at (Doc. 103 at 10–11). Thus, the sum being paid to Plaintiffs' counsel is reasonable. *Leleux v. Covelli Family Ltd. P'ship*, No. 6:17-cv-747-Orl-37TBS, 2017 WL 11036826, at *2 (M.D. Fla. Nov. 14, 2017) (holding attorney's fees were sufficient after finding that attorney's fees were determined separately from Plaintiff's recovery). Moreover, counsel is compensated adequately, and no conflict of interest taints the amount the employees will recover under the settlement. Accordingly, the award of the attorney's fees is appropriate.

## CONCLUSION

In light of the foregoing, the Parties' Motion, *Taylor*, No. 1:15-cv-156 at (Doc. 103), is **GRANTED in part and DENIED in part**. The *Taylor* and *Allen* actions are hereby consolidated for settlement purposes only. The Court, however, **REJECTS** the proposed settlement agreement and **DENIES without prejudice** the Parties' joint request for approval of the FLSA settlement. The Parties are **ORDERED** to submit a revised proposed settlement agreement, in full, within **twenty-one (21) days** of the date of this Order.

**SO ORDERED**, this 20th day of January, 2021.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

9